UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| **MATTHEW WRIGHT,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | Civil Action No. 4:20-cv-454-KGB |
| | : | |
| **TYLER TECHNOLOGIES, INC.,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

---

**PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS
PURSUANT TO 29 U.S.C. § 216(B) AND BRIEF IN SUPPORT**

---

Pursuant to 29 U.S.C. § 216(b), Plaintiff Matthew Wright hereby moves this Court

for the award of (1) attorney's fees in the amount of $19,372.20 in fees and (2) costs

in the amount of $523.00 in this FLSA action.

1.      **PRELIMINARY STATEMENT/PROCEDURAL HISTORY**

Plaintiff filed this FLSA action against Defendant on February 24, 2020, in the

Northern District of Georgia alleging violations of the overtime pay provisions of

the FLSA by his employer, Tyler Technologies, Inc. [Dkt. 1] Plaintiff was employed

by Defendant as an implementation consultant and alleges that he was improperly

classified as exempt and denied overtime wages.

Defendant filed a Motion to Dismiss on March 24, 2020. The Georgia District

Court ruled against Defendant as to its request to dismiss, but with Plaintiff's consent

granted the alternative relief of transfer to this Court. [Dkt. 19, 20] After the case was transferred, Plaintiff retained Joshua Sanford and Courtney Lowery as local counsel. [Dkt. 22, 23] Defendant filed its answer alleging, *inter alia*, that Plaintiff was an exempt administrative employee. Dkt. 31, Defenses ¶ 2.

Plaintiff served written discovery responses on Defendant on September 11, 2020, and written discovery requests on Defendant on November 2, 2020. Counsel conferred on several occasions regarding the scheduling of depositions—and in fact Plaintiff engaged in significant preparation for his deposition—but depositions were ultimately avoided due to settlement.

Plaintiff alleged in his First Amended Initial Disclosures that he was entitled to recover approximately $2,729.46 in back wages and an equal amount if liquidated damages for a total of $5,458.92, exclusive of fees and costs. The Parties engaged in settlement negotiations but were unable to reach an agreement. On November 18, 2020, Defendant made an offer of judgment for $4,500 plus reasonable attorney's fees and costs. [Dkt. 41-1] Plaintiff accepted the offer of judgment on December 1, 2020 [Dkt. 41].

To pursue his claim against Defendant, Plaintiff Wright obtained experienced counsel, who took the case agreeing to advance all costs of litigation and to hold Plaintiff harmless in the event of non-recovery. Plaintiff pursued this case diligently, making appropriate litigation decisions as the case progressed, and earned a

favorable judgment. An award of fees in the amount of $21,738.42 plus costs in the amount of $523.00 is appropriate.

**2.    ARGUMENT AND CITATIONS OF AUTHORITY**

**A.    Plaintiff Is A Prevailing Party Entitled To An Award Of His Reasonable Attorney's Fees And Costs Pursuant to 29 U.S.C. §216(b)**

Under the FLSA, an award of reasonable attorney's fees and costs to the prevailing party is mandatory. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) ("An award of attorney fees to a prevailing plaintiff under § 216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge."). Congress enacted the fee-shifting provision of the FLSA "to insure effective access to the judicial process by providing attorney fees for prevailing Plaintiff with wage and hour grievances." *Fegley*, 19 F.3d at 1134; *see also* 29 U.S.C. § 202 (LEXIS 2015) (stating intent to protect workers).

The fee-shifting provision of the FLSA serves two purposes. First, it relieves the government of the burden and expense of enforcing the Act by incentivizing private attorneys to pursue wage claims. *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999) ("Congress enacted fee-shifting statutes to compensate 'private attorneys general' and thereby to encourage private enforcement of civil rights statutes, to the

benefit of the public as a whole."). Second, it encourages private litigants to sue for their rights even when the expected monetary recovery is otherwise "too small to attract effective legal representation." *Id.*; *see also City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) (explaining that discouraging civil rights litigants with meritorious claims but small damages from bringing suit "is totally inconsistent with Congress' purpose"); *Simpson v. Merchants & Planters Bank*, 441 F.3d 572, 581 (8th Cir. 2006) ("tying the attorney's fees to the amount awarded would discourage litigants with small amounts of damages from pursuing a civil rights claim in court"). In keeping with those purposes, "[a]n attorney fees award under a fee-shifting statute should be comparable to what is traditionally paid to attorneys who are compensated by a fee-paying client." *Morales v. Farmland Foods, Inc.*, No. 8:08CV504, 2013 U.S. Dist. LEXIS 56501, at *27 (D. Neb. Apr. 18, 2013).

Here, Plaintiff's counsel has both used prudent billing judgment and has obtained positive results for their client. All of the work performed was necessary to obtain those results. This Court should, therefore, award Plaintiff his full Attorney's fees and costs.

### B.    Determination of a Reasonable Fee

Courts determine a reasonable fee with a two-step process. First, the court evaluates the fee petition of a prevailing party and calculates the "lodestar;" second, the court determines whether the lodestar calculation should be adjusted upward or

downward, based on various factors, discussed more fully below. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). The "lodestar" is "the product of the number of hours reasonably expended on the litigation and the reasonable hourly rate at which those hours should be billed." *West v. Border Foods, Inc.*, 2007 U.S. Dist. LEXIS 43423, 6 (D. Minn. 6/8/2007) (citing *Hensley*, 461 U.S. at 433). "Reasonably expended" time is supported by "adequate documentation supporting the number of hours claimed." *Gay v. Saline County*, 2006 U.S. Dist. LEXIS 76852, 5–6 (E.D. Ark. 10/20/2006). The reasonable hourly rate is "the prevailing rate for similar legal services performed by attorneys of comparable skill, experience, and reputation" in the community in which the litigation is situated. *West*, 2007 U.S. Dist. LEXIS 43423, 6.

To determine the hours reasonably expended, "[t]he relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Wooldridge v. Marlene Indus. Corp*., 898 F.2d 1169, 1177 (6th Cir. 1990). Similarly, the Eighth Circuit explained in *Jenkins v. Missouri* that, when calculating a fee award, the focus is on whether the time expenditures were reasonable, not whether the attorney won each and every disputed issue:

> A court's focus should not be limited to the success/failure of each of the attorney's actions. Rather, it should be upon whether those actions were reasonable . . . . Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only

> those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning.

127 F.3d at 718 (8th Cir. 1997) (internal citations omitted). The key issue is whether a reasonable attorney would have engaged in similar time expenditures at the time the work was performed.

A court should give deference to a lawyer's professional judgment as to how much time was necessary to spend on the case. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). This principle flows from the fact that an attorney is naturally incentivized to work efficiently and reasonably in cases where the attorney remains uncompensated for his or her time until the end of the case. *See id.* ("[L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee"). Plaintiff's attorneys working under these circumstances expend their time and effort without knowing whether they will be paid for it; thus, they have an incentive to spend as little time on each particular task as is reasonably necessary to competently and diligently carry out the representation. *See id*.

In awarding fees, a district court must "provide a concise but clear explanation of its reasons for the fee award." *See Hensley*, 461 U.S. at 437; *see also*, *Moreno*, 534 F.3d at 1111 ("When the district court makes its award, it must explain how it came up with the amount. The explanation need not be elaborate, but it must be comprehensible."). "Where the difference between the lawyer's request and the

6

court's award is relatively small, a somewhat cursory explanation will suffice." *Moreno*, 534 F.3d at 1111. However, "where the disparity is larger, a more specific articulation of the court's reasoning is expected." *Id*. (*citing Bogan v. City of Boston*, 489 F.3d 417, 430 (1st Cir. 2007)).

There is a strong presumption in favor of awarding the lodestar figure. *Beauford v. ActionLink, LLC*, No. 4:12-cv-139-JLH, 2014 U.S. Dist. LEXIS 5039, at *21 (E.D. Ark. Jan. 15, 2014). The presumption of the reasonableness of the lodestar calculation "may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id*. at *21–22. The burden of identifying unreasonable billing can be placed on the losing party because it has both the incentive and the knowledge of the case to point it out. *Moreno*, 534 F.3d at 1116. If the losing party "cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut." *Id*.

Factors to consider in deciding whether to adjust the lodestar fee include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature

7

> and length of the professional relationship with the client; and
> (12) awards in similar cases.

*Gay*, 2006 U.S. Dist. LEXIS 76852, 7 (quoting *Hensley*, 461 U.S. at 430 n. 3).

These are sometimes called the *Johnson* factors, after *Johnson v. Georgia Highway*

*Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). "[T]he court need not

exhaustively address every factor." *Sherman v. Kasotakis*, 314 F. Supp. 2d 843,

882 (N.D. Iowa 2004). Further, these factors should rarely be used to adjust the fee

because many of them are subsumed within the calculation of the lodestar. *See*

*Blum v. Stenson*, 465 U.S. 886, 898–900 (1984); *Pennsylvania v. Delaware Valley*

*Citizens' Council*, 478 U.S. 546, 565–66 (1986) ("the lodestar figure includes

most, if not all, of the relevant factors constituting a 'reasonable' attorneys' fee");

*Saizan v. Delta Concrete Prods. Co.*, Inc. 448 F.3d 795, 800 (5th Cir. 2006);

*Beauford*, 2014 U.S. Dist. LEXIS 5039 at *21–22.

## C.    Calculation of the Lodestar

As shown on the Invoices of Plaintiff's counsel (Exhibits 1 and 2), Plaintiff

incurred $21,211.95 in attorney's fees in the course of litigating his claims, of

which $14,610.95 was billed by Plaintiff's Atlanta counsel and $6,601.00 was

billed by local counsel. After exercising billing judgment to identify certain fees

that should be deducted as explained below, Plaintiff is requesting an award of

$19,372.20 in fees ($13,754.20 by Atlanta counsel and $5,618.00 by local

counsel). Moreover, the recorded hours do not include several hours of work by

Plaintiff's lead counsel in attempted to locate and retain local counsel, as well as all efforts—several more hours—of work that went into the present motion and supporting declarations. Plaintiff's counsel's hourly rates are reasonable and the attorney's fees incurred were necessary and reasonable to the prosecution of this case. By attaching thorough, contemporaneous records of Plaintiff's counsel's time, Plaintiff has submitted adequate documentation supporting the number of hours reasonably expended in litigating this matter.

Plaintiff's counsel maintained detailed contemporaneous records of their time in this case. Each task reflected in the records was necessary to the successful resolution of this matter, and the time spent on each task was reasonable.

Further, Plaintiff's counsel have made reductions to their billing in "a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary," or simply to make billing more reasonable, and have reduced their fee request accordingly. *See Hensley*, 461 U.S. at 434; Exhibit 1 at ¶ 9; Exhibit 2 at ¶ 26. Plaintiff's efforts to voluntarily reduce fees further support the lodestar requested.

In sum, the lodestar amount should be awarded in full, particularly since the *Johnson* factors do not support a reduction. Plaintiff's counsel pursued Plaintiff's claims with prudence and efficiency. Counsel kept thorough records of their time and obtained an excellent result. Therefore, Plaintiff's request for attorney's fees should be granted in full.

B.   _Johnson_ Factors

As discussed above, courts are generally expected to award the lodestar fee. However, in its analysis of fee awards in _Hensley_, the Supreme Court alluded to many factors that a court may consider in deciding whether to adjust the lodestar fee upward or downward. 461 U.S. at 430 n. 3. A comparison of the relevant factors to the facts of this case support an award of the lodestar fee without adjustment.

1.   _The time and labor required for the litigation_

Counsel for Plaintiff reviewed their records of hours worked in this case and adjusted for unproductive, excessive or redundant time entries. The time worked by Plaintiff's attorneys as reflected in the lodestar was reasonable and necessary to the advancement of this litigation. Therefore, this factor is already reflected in the lodestar and cannot be used to again reduce the lodestar requested.

2.   _The skill required to perform the legal services properly_

Attorneys for Plaintiff devote a significant part of their practice, both in terms of time and money, to FLSA-based claims. Specialization, such as in labor and employment law, can support a higher-than-average rate. _See_ e.g., _Autrey v. Food Concepts Int'l, LP_, No. 2:13-cv-00131, 2017 U.S. Dist. LEXIS 46693, at *14 n.5 (S.D. Ohio Mar. 29, 2017). Moreover, should the Court have any doubt as to the complexity of issues at play in this administrative exemption case, Plaintiff would

respectfully point the Court to the summary judgment briefing in the related *Greene* action.[1] This factor does not justify a downward deviation.

### 3.    The customary fee.

In determining a reasonable rate for purposes of awarding attorney's fees, including fees in FLSA cases, courts may consider rates awarded in other cases. Accordingly, the case law discussed above regarding billing rates awarded in other cases confirms the reasonableness of the rates claimed by Plaintiff's counsel.

Where specialized areas of the law are concerned, "the national market may provide a reasonable hourly rate." *Baker v. John Morrell & Co.*, 263 F. Supp. 2d 1161, 1192 (N.D. Iowa 2003). Plaintiff's counsel are cognizant of the fact that the Atlanta counsel's rates are somewhat higher than those charged in the Little Rock market, but would urge the Court not to reduce those rates for three reasons: (1) this was initiated as a case in the Northern District of Georgia and Plaintiff is in this jurisdiction against his will; (2) had any other attorney handled this matter, without the benefit of having litigated against Defendant Tyler previously, *far more* effort and discovery would have been required; and (3) Defendant has retained counsel

---

[1]    Plaintiff is happy to provide the Court with the briefing from that case, but refrains from doing so except upon request to avoid inundating the Court with voluminous materials that may not be desired.

from Houston, Texas to handle this matter rather than counsel from Little Rock, and Defendant's Houston counsel are presumably billing at their regular Houston rates.[2]

Plaintiff's attorneys are familiar with the rates charged by attorneys in their respective jurisdictions, and the hourly rates utilized are reasonable and in line with those rates, as well as rates previously awarded by numerous district courts. Exhibit 1 at ¶¶ 11–16; Exhibit 2 at ¶ 17–23. Therefore, neither an upward nor downward adjustment to the lodestar would be appropriate in this case based on this factor.

> 4.    *Whether the fee is fixed or contingent.*

In this case, Plaintiff was represented on a contingency basis, Exhibit 1 at ¶ 4, and the contingent nature of the fee is captured in the hourly rate requested. *See Fox v. Pittsburg State Univ.*, No. 2017 U.S. Dist. LEXIS 97879, at *45 (D. Kan. June 26, 2017) (recognizing that while the "contingent nature of the fee does not justify enhancement of the lodestar *after* it has been calculated . . . the contingency risk should be reflected in the lodestar in the form of a higher hourly rate for the attorney skilled and experienced enough to overcome" the financial risk of prosecuting a case on a contingency basis, "including delayed payment and the contingency fee agreement").

---

[2]    Plaintiff assumes that if this is not the case, and that Defendant's counsel bills at lower rates when his clients take him to other jurisdictions, Mr. McKeeby will present the Court with his complete time and billing records for Defendant Tyler as well as a declaration to that effect.

To be sure, the "contingency" fee arrangement between Plaintiff and Plaintiff's counsel is not a contingency fee in the traditional sense, whereby an attorney takes a portion of the Plaintiff's recovery. Rather, counsel for Plaintiff rely solely on the fee-shifting provisions of the FLSA to recover their fees in this case.

In other contingency fee arrangements, counsel's downside is to recover nothing, while the upside is the potential for recovery of far more than the fees actually incurred by the attorney through the taking of a portion of the Plaintiff's recovery. In these arrangements, counsel's risk and delay in receiving payment is offset by the potential for significant recovery.

This is not how the contingency arrangement works for Plaintiff's counsel in this case. Instead, Plaintiff's counsel pursued the FLSA case without payment throughout the litigation. If Plaintiff recover nothing, Plaintiff's counsel recover nothing. On the other hand, if Plaintiff receive a judgment in his favor, Plaintiff's counsel must then separately petition the Court to recover fees, and after an offer of judgment—as here—must do so without payment for large amounts of additional work. Therefore, this factor does not support a downward deviation from the lodestar, and in fact supports an upward deviation.

> 5.   *The amount involved and the result obtained.*

Plaintiff successfully pursued this case and obtained a $4,500 judgment, or 82.4% of Plaintiff's estimate of his damages, as shown in Plaintiff's Amended Initial

Disclosures. Exhibit 3 hereto. Thus, Plaintiff was successful and this factor does not support a downward deviation from the lodestar.

The "degree of success" factor does not give district courts discretion to reduce an award based on the amount of the judgment. *See Hensley*, 461 U.S. at 434–436; *Jenkins*, 127 F.3d at 716. After all, an award of an attorney's fee encourages the vindication of congressionally identified policies and "rights that cannot be valued solely in monetary terms." *Blanchard*, 489 U.S. at 96; *Fegley*, 19 F.3d at 1134–35 ("Courts should not place undue emphasis on the amount of the Plaintiff's recovery because an award of attorney fees…encourages the vindication of congressionally identified policies and rights" (internal quotations omitted)). Moreover, the fee-shifting provision of the FLSA is for the benefit of the public as a whole, not just the parties in the case. *See* 29 U.S.C. § 202 (stating intent to protect workers); *Quaratino*, 166 F.3d 422, 426 (2d Cir. 1999) ("Congress enacted fee-shifting statutes to compensate 'private attorneys general' and thereby to encourage private enforcement of civil rights statutes, to the benefit of the public as a whole.").

In *Simpson*, a case under the Equal Pay Act, the Eighth Circuit stated that it has "explicitly rejected a 'rule of proportionality' in civil rights cases because tying the attorney's fees to the amount awarded would discourage litigants with small amounts of damages from pursuing a civil rights claim in court." 441 F.3d at 581; *see also Singer v. City of Waco*, 2001 U.S. Dist. LEXIS 27106, at *10 (W.D. Tex.

Nov. 13, 2001). This rule is equally applicable to the FLSA. *Id.* "[I]n a lawsuit initiated under the FLSA an attorney's failure to obtain every dollar sought on behalf of his client does not automatically mean that the modified lodestar amount should be reduced," and "it is common for FLSA attorneys' fees awards to significantly exceed the amount the plaintiff recovers in unpaid wages." *Meesook v. Grey Canyon Family Med., P.A.*, 2014 U.S. Dist. LEXIS 143081, at *4 (W.D. Tex. Oct. 8, 2014); *see also Robinson v. Nexion Health at Terrell, Inc.*, No. 3:12-CV-3853-L-BK, 2017 U.S. Dist. LEXIS 195906, at *20 (N.D. Tex. Nov. 1, 2017) (recognizing that courts have "often approved fee awards that exceed damages") (string citing cases). Therefore, the results obtained in this litigation do not support a reduction in the lodestar fee.

6.      *The experience, reputation, and ability of the attorneys.*

Plaintiff's attorneys are highly experienced in FLSA-based litigation, and have represented individual plaintiffs, as well as classes on state-wide, regional, and national levels. Exhibit 1 at ¶¶ 2–3; Exhibit 2 at ¶ 4–14. In short, Plaintiff's counsel are all respected specialists in the Fair Labor Standards Act. Their experience, reputation, and ability support the lodestar amount requested.

7.      *Awards in similar cases.*

Reasonable hourly rates for attorneys in similar cases are discussed above in relation to the "customary fee" awarded. More relevant to this topic, fee shifting is

most important in cases where workers cannot afford to pay an attorney's normal rate and the damages are too low to yield a sufficient contingent fee. *See Estrella v. P.R. Painting Corp.*, 596 F. Supp. 2d 723, 727 (E.D.N.Y. 2009) (FLSA fee-shifting provision is "designed in part to secure legal representation for Plaintiff whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements"). Indeed, if attorney's fees were limited by the amount of unpaid wages, many FLSA violations in this nation would go un-vindicated because the economics would prevent workers from obtaining counsel.

"Given the nature of claims under the FLSA, it is not uncommon that attorney fee requests can exceed the amount of judgment in the case by many multiples," as the fees awarded in wage cases demonstrate. *Howe v. Hoffman-Curtis Partners Ltd., LLP*, 215 Fed. Appx. 341, 342 (5th Cir. 2007) ($23,357.30 in damages and $129,805.50 in attorney's fees) (citing *Fegley*, 19 F.3d at 1134–1135 ($7,680 in overtime compensation and $40,000 in attorneys' fees.)).[3] As previously discussed,

---

[3]      *See also Lucio-Cantu v. Vela*, 239 Fed. Appx. 866 (5th Cir. 2007) (finding no abuse of discretion in award of $51,750 in attorney fees on a recovery of $4,679, 11.06 times the damages awarded); *Howe v. Hoffman-Curtis Partners Ltd., LLP*, 215 Fed. Appx. 341, 342 (5th Cir. 2007) (affirming attorney fees of $129,805.50 on $23,357.30 in damages, 5.5 times the damages awarded); *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 358 (5th Cir. 1990) (affirming an award of $9,250 in attorney's fees on a $1,181 judgment for overtime compensation, 7.8 times the amount awarded); *Garcia v. Tyson Foods*, 2012 U.S. Dist. LEXIS 170177, 2012

this type of disparity between the award and fees incurred is wholly appropriate in wage cases. In other words, where the stakes of wage litigation are low, the defendant runs up the bill at its own risk.

C.    Costs and Expenses

Section 216(b) of the FLSA also provides for an award of costs to a prevailing plaintiff. 29 U.S.C. § 216(b). As a prevailing Plaintiff, Plaintiff Wright seeks $523.00 in costs, all of which represents filing fees and costs for process of service. Exhibit 1 ¶ 9 and Attachment B thereto. The amount is correct and was necessarily incurred, and the services giving rise to the costs were actually and necessarily performed. Each cost is described sufficiently to demonstrate that the cost was necessary. Accordingly, Plaintiff request an award of all his costs.

3.    CONCLUSION

Plaintiff Matthew Wright prevailed on his FLSA claim and, as such, is entitled to an award of his reasonable fees and costs. Plaintiff respectfully request that he be awarded his attorney's fees in the amount of $19,372.20 and costs in the amount of $523.00.

---

WL 5985561 (D. Kan. Nov. 29, 2012) (awarding over $3.2 million in attorney fees on a jury verdict of $533,011 in a collective action, 6 times the amount awarded).

This 28th day of December 2020,

Respectfully submitted,

**DELONG, CALDWELL, BRIDGERS, FITZPATRICK & BENJAMIN LLC**

_s/ Matthew W. Herrington._
Matthew W. Herrington
Georgia Bar No. 275411

101 Marietta Street, NW
Atlanta, Georgia 30303
(404) 979-3150     Telephone
(404) 979-3170     Facsimile
matthew.herrington@dcbflegal.com